BRYNA G. RUDZIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rudzin v. Commissioner
Docket No. 21754-93
United States Tax Court
T.C. Memo 1995-13; 1995 Tax Ct. Memo LEXIS 13; 69 T.C.M. (CCH) 1649; January 12, 1995, Filed *13 Decision will be entered under Rule 155. For petitioner: Peter Driscoll. For respondent: Diane D. Helfgott. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1990 in the amount of $ 9,509 and an accuracy-related penalty under section 6662(a)[1] in the amount of $ 1,902. The issues remaining for decision are: (1) Did petitioner have gross income for 1990 as a result of having received in that year a distribution pursuant to a qualified domestic relations order as defined in section 414(p) (QDRO) and certain dividend checks? We hold that she did. (2) Is petitioner liable for 1990 for the accuracy-related penalty under section 6662(a)? We hold that she is. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner resided *14 in Columbia, Maryland, at the time the petition was filed. Prior to 1988, petitioner was married to Jay P. Rudzin (Mr. Rudzin). On March 4, 1988, they were divorced pursuant to a judgment for divorce (divorce judgment) issued by the Circuit Court of Howard County, Maryland (Maryland Circuit Court). At the time of the divorce, and for all relevant years prior to that time, Mr. Rudzin was employed by Westinghouse Electric Corporation (Westinghouse). Mr. Rudzin was a participant in the Westinghouse Personal Investment Plan (plan), an arrangement under which Mr. Rudzin was to contribute a portion of his salary to the plan and Westinghouse was to contribute 50 cents for every dollar contributed by Mr. Rudzin. The funds contributed by Mr. Rudzin and Westinghouse were used to purchase shares of Westinghouse stock. In order for an employee to be vested in the employer contributions to the plan, contributions to the plan were required to remain invested therein for three years after the close of the year of contribution. Consequently, for at least the period 1982 through 1985, contributions to the plan were segregated by the year of investment. On July 3, 1989, the divorce judgment *15 was modified by order of the Maryland Circuit Court in order to provide for the disposition of Mr. Rudzin's benefits under the plan. (The parties do not dispute that the July 3, 1989 order issued by the Maryland Circuit Court is, and we shall hereinafter refer to it as, a QDRO.) The QDRO, which identified Mr. Rudzin as the participant in the plan and petitioner as the alternate payee of the plan, stated: Immediately upon the date of this Judgment, or on the first date thereafter when the said Plan will permit, 50% of the Westinghouse Electric Corporation stock held in the 1984 lay-away account of the Participant in the Plan, and purchased for the Plan prior to March 31, 1985, shall be paid to the Alternate Payee.
The QDRO further provided that petitioner was to include the taxable portion of the distribution in her gross taxable income when received and that it was to qualify as a qualified domestic relations order under the Retirement Equity Act of 1984. In response to the QDRO, Westinghouse executed a document entitled "Determination As to Qualification of Domestic Relations Order, Notice to Participant and Alternate Payee and Agreement to Comply with Order". That *16 notice, which identified Mr. Rudzin as the participant and petitioner as the alternate payee, provided: As soon as practicable, the Westinghouse Personal Investment Plan will pay the Alternate Payee 50% of the Westinghouse stock purchased prior to March 31, 1985 and held in the Participant's account, plus dividends thereon to date of distribution.
On November 9, 1990, Westinghouse distributed to petitioner a certificate representing 986 shares of its common stock (distribution). [2]
After Westinghouse made *17 the distribution to petitioner, Mr. Rudzin informed her that Westinghouse had made a mistake and had issued too many shares to her. He also told petitioner that she should not place the stock in an individual retirement account (IRA) because she would have to pay tax on the stock that she would eventually be required to return. At the time in 1990 that petitioner received the distribution of 986 shares of Westinghouse stock, she knew that she had only 60 days to roll those shares over into an IRA in order to avoid paying tax on the distribution. On a date not disclosed in the record, petitioner placed the stock certificate issued to her by Westinghouse in a safety deposit box. It remained in that box until approximately one week before the trial herein. During 1990, petitioner received dividend checks totaling $ 345 in respect of the 986 shares distributed to her in that year by Westinghouse. Petitioner did not cash those checks during that year. During 1990, a controversy existed regarding whether Westinghouse had misinterpreted the QDRO and, consequently, had issued too many shares of its stock to petitioner in the distribution. At no time during 1990, and at no time prior *18 to the trial herein, was that controversy resolved. OPINION Petitioner bears the burden of proving that respondent's determinations in the notice of deficiency are erroneous. Rule 142(a); Welch v. Halvering, 290 U.S. 111, 115 (1933). Gross Income -- Distribution
Respondent determined that, pursuant to a QDRO, petitioner received in 1990 a distribution in the form of 986 shares of Westinghouse stock. Respondent further determined that, under sections 72(a) and 402(a), the distribution was gross income to petitioner in the year of receipt (i.e., 1990) to the extent of $ 29,217. [3]
At trial, petitioner, who did not file any briefs herein, argued that she is not liable for 1990 *19 for tax on the distribution because she was not entitled to keep all of the 986 shares of Westinghouse stock distributed to her in that year. She did not dispute that (1) those shares were distributed to her pursuant to a QDRO, (2) she exercised actual control over the stock certificate representing those shares by placing it in her safety deposit box, and (3) she did not roll the distribution over into an IRA within 60 days of its receipt. Actual Right
At trial, petitioner testified that Mr. Rudzin notified her that he believed that Westinghouse had distributed too many shares to her in 1990 because it misinterpreted the QDRO. [4] *20 Nonetheless, petitioner acknowledged in her testimony, and Mr. Rudzin agreed, that she was entitled to at least a portion of the Westinghouse stock that she received during 1990. Consequently, petitioner had an actual right to, [5] and is therefore liable for tax on, at least some portion of that stock. At trial, petitioner did not specify, or even approximate, the number of shares distributed to her in 1990 that she claimed belonged to Mr. Rudzin and the number that she claimed belonged to herself. Nor did petitioner corroborate with reliable evidence her claim that she was entitled to only a portion of the Westinghouse shares she received in 1990. The corroborative evidence on which petitioner relied was the testimony of Mr. Rudzin. His *21 testimony, while corroborating petitioner's general claim that she received too many shares of Westinghouse stock during 1990, did not specify the number of such shares that he claimed belonged to himself and the number that he claimed belonged to petitioner. Although he testified that approximately one-third of such shares belonged to petitioner, that testimony does not persuade us that his approximation is a reliable estimate. On the present record, we find that petitioner failed to prove the number of Westinghouse shares that she received in 1990 to which she did not have an actual right, and therefore she failed to prove that she did not have an actual right to receive all of the Westinghouse shares distributed to her in that year. Accordingly, we sustain respondent's determination that petitioner is liable for 1990 for tax on the distribution to her of 986 shares of Westinghouse stock in the amount of $ 29,217. Claim of Right
Even assuming arguendo that petitioner had proved that she did not have an actual right to all of the Westinghouse shares distributed to her in 1990, she failed to prove that she did not have a claim of right to those shares. In North American Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932), *22 the Supreme Court summarized the claim of right doctrine as follows: If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to [report in his tax] return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * *
Thus, the claim of right doctrine applies to the entire amount of earnings received even if the taxpayer may be under a contingent obligation to restore some or all of those earnings at some future point. Professional Ins. Agents of Michigan v. Commissioner, 78 T.C. 246, 270 (1982), affd. on another issue 726 F.2d 1097 (6th Cir. 1984). In order to avoid application of the claim of right doctrine on a part or all of the earnings received, the taxpayer must recognize in the year of receipt an existing and fixed obligation to repay some definite part or all of the earnings received and make provision for repayment. Nordberg v. Commissioner, 79 T.C. 655, 665 (1982), affd. without published *23 opinion 720 F.2d 658 (1st Cir. 1983); Hope v. Commissioner, 55 T.C. 1020, 1030 (1971), affd. 471 F.2d 738 (3d Cir. 1973). The 986 shares in question were distributed to petitioner by Westinghouse in 1990 pursuant to the QDRO. She had actual control over those shares during that year. At no time during 1990 did she acknowledge that she was not entitled to some definite and fixed portion of those shares. In fact, as of the date of the trial herein, petitioner still did not know if, and therefore did not prove that, she was required to repay any of the stock she received in 1990 as a distribution from Westinghouse. Thus, her obligation to repay those shares was at best contingent, and not fixed, during that year when she received them. At trial, petitioner claimed that she could not dispose of any of the Westinghouse stock, or roll it over into an IRA, because (1) all of the stock was issued in one certificate, (2) she recognized that she was not entitled to all of the shares distributed to her, and (3) she would have been guilty of conversion of someone else's property if she disposed of any of *24 those shares. The stock certificate on its face does not contain any restrictions on transferability. The only possible restriction on transferability of the Westinghouse stock was the contingent possibility that, at some indeterminate point in the future, petitioner would have to return some undetermined portion of those shares. Not only did petitioner fail to establish that she recognized in 1990 an existing and fixed obligation to return some definite number of shares of the Westinghouse stock that was distributed to her in that year, she also failed to prove that she made provision during 1990 for returning any of those shares. Until approximately one week prior to the trial herein, petitioner still held in her safety deposit box the stock certificate representing 986 shares of Westinghouse stock that she received in 1990 from Westinghouse. It appears from the record that petitioner was presented with an opportunity to return that certificate in 1991 to Westinghouse and have the Maryland Circuit Court issue a new and unambiguous order requiring Westinghouse to distribute its shares in accordance with Mr. Rudzin's interpretation. [6] However, she did not do so because Mr. Rudzin *25 refused to pay for any tax liability that petitioner might have as a result of her returning the certificate. [7]
*26 Based on our review of the entire record in this case, we find that petitioner failed to prove that she did not have a claim of right to the 986 shares of Westinghouse stock that were distributed to her during 1990. Accordingly, we sustain respondent's determination that petitioner had gross income in the amount of $ 29,217 for 1990 as a result of having received those shares. Gross Income -- Dividends
In addition to having argued that she did not have a claim of right to the distribution from Westinghouse during 1990, petitioner argued at trial that she did not have a claim of right during that year to the dividend checks she received from Westinghouse in respect of the stock she received in the distribution. Petitioner claimed that she did not cash those dividend checks because she was not entitled to dividends on all of the shares distributed to her in 1990. Rather, petitioner claimed that she either returned the dividend checks to Westinghouse or gave them to Mr. Rudzin. Moreover, as discussed above, petitioner acknowledged at trial that she was entitled to at least a portion of the shares distributed to her. Thus, she implicitly acknowledged that she was entitled *27 to at least a portion of the dividends paid with respect to those shares. As was true above with respect to the shares that she received in 1990, on the present record, we find that petitioner failed to prove the amount of the dividends she received in respect of those shares to which she did not have an actual right or claim of right during 1990. We therefore sustain respondent's determination that petitioner had gross income for 1990 in the amount of $ 345 as a result of having received dividends during that year with respect to the 986 shares of Westinghouse stock that were distributed to her in that year. Accuracy-Related Penalty
Respondent determined that petitioner is liable for 1990 for the accuracy-related penalty under section 6662(a). That penalty is equal to 20 percent of the underpayment of tax resulting from a substantial understatement of tax. An understatement is equal to the excess of the amount of tax required to be shown in the return less the amount of tax shown in the return, sec. 6662(d)(2)(A), and is substantial in the case of an individual if it exceeds the greater of 10 percent of the tax required to be shown or $ 5,000, sec. 6662(d)(1)(A). The *28 amount of the understatement is reduced to the extent it is attributable to an item that was adequately disclosed in the return or for which there was substantial authority. Sec. 6662(d)(2)(B). Petitioner presented no evidence, and made no argument, regarding her liability for the accuracy-related penalty. On the present record, we sustain respondent's determination that petitioner is liable for 1990 for the accuracy-related penalty under section 6662(a). To reflect the foregoing and the concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. As part of that distribution, petitioner also received a check for $ 11.17 in payment of a fractional share. It is not clear from the record whether respondent made any determination relating to that check in the notice of deficiency issued to petitioner for 1990. It also is not clear from the record what happened to it. Since the parties advanced no arguments with respect to the distribution of the check, we shall limit our discussion to the distribution of the 986 shares of Westinghouse stock.↩
3. Under sec. 72(b)↩, a distribution is taxable to the extent it exceeds the taxpayer's basis in the amount distributed. Assuming arguendo that petitioner is liable for tax on the distribution, respondent determined, and petitioner did not dispute, that the taxable portion of the distribution is $ 29,217.
4. At trial, Mr. Rudzin testified that Westinghouse distributed to petitioner one-half of everything purchased for the plan prior to March 31, 1985, and held by the plan as of that date, which included contributions from 1982, 1983, and 1984. Mr. Rudzin further testified that prior to July 3, 1989, the date the QDRO was issued, the plan had distributed the contributions from 1982 and 1983 and that those distributions had been divided between him and petitioner. Thus, he claimed that the QDRO related only to the contributions made during 1984 and the first quarter of 1985 and did not relate to the contributions made during 1982 and 1983. Mr. Rudzin claimed that the Westinghouse distribution included amounts contributed from 1982 and 1983 and that therefore petitioner received a greater distribution than she was entitled to receive pursuant to that QDRO. Based on our findings herein and review of the applicable law, we do not feel compelled to decide whether Westinghouse misinterpreted the QDRO and therefore distributed too much stock to petitioner. We believe it is sufficient to find that during 1990 a controversy existed regarding the amount of the distribution received by petitioner and that at no time during 1990, and in fact at no time prior to the trial herein, was that controversy resolved.↩
5. An actual right is to be distinguished from a claim of right. As discussed below, a person has a claim of right to amounts received if there is a possibility that person will have to restore the amounts received at some future date. In view of petitioner's concession that she was entitled to at least some of the stock she received in 1990, there was no possibility that she would ever be required to relinquish all of that stock. Only her entitlement to some unidentified portion of the shares she received was in dispute. Thus, petitioner had an actual right, not just a claim of right, to some portion of the Westinghouse stock she received during 1990.↩
6. Westinghouse never acknowledged that it incorrectly calculated the number of shares to be distributed to petitioner or that it misinterpreted the QDRO. However, it apparently was willing to start over by taking the distributed shares back from petitioner, replacing them into the plan, and redistributing a certain number of Westinghouse shares to petitioner pursuant to a reworded and unambiguous QDRO to be issued by the Maryland Circuit Court.↩
7. Petitioner's case illustrates why the claim of right doctrine is used to determine the year in which a taxpayer is required to include income in his or her return. It appears from the record that, although Mr. Rudzin still believes and has led petitioner to believe that Westinghouse distributed too many shares to petitioner, after they refused to accept an offer by Westinghouse in 1991 to take the shares distributed to petitioner in 1990 back into the plan, neither Mr. Rudzin nor petitioner took any action to have any of those shares returned to Westinghouse. Thus, even though it appears that petitioner will be allowed to keep all of the shares she received in 1990 as a result of the distribution, if those shares are not income to her for 1990 in the amount determined by respondent, it is not clear that petitioner will ever have gross income as a result of the distribution, since it does not appear that Mr. Rudzin's dispute with Westinghouse will ever be resolved.↩