LAWRENCE G. HUMPHREY AND KAREN G. HUMPHREY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Humphrey v. Commissioner
Docket No. 26288-92
United States Tax Court
T.C. Memo 1995-110; 1995 Tax Ct. Memo LEXIS 109; 69 T.C.M. (CCH) 2103; March 20, 1995, Filed *109 Decision will be entered under Rule 155. For petitioners: Louis A. Silks, Jr.
For respondent: Charles M. Berlau. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined the following deficiencies in, and additions to, petitioners' Federal income taxes: Additions to Tax Sec.
Sec.
Sec. Year
Deficiency
6653(a)(1)
6653(a)(2)
6661(a)
1985
$ 5,892
$   295
[1]
$ 1,473
1986
25,838
1,292
[1]
6,460
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Most of the differences between the parties were resolved prior to trial. The issue remaining for decision [1] *110 concerns the amount of business income (Schedule C income) Lawrence G. Humphrey [2] received in 1985 and 1986. Respondent reconstructed petitioner's 1985 and 1986 Schedule C income. The parties have stipulated petitioner's Schedule C gross receipts for 1985 and 1986. Their disagreement concerns reductions to the Schedule C gross receipts to reflect certain items. Petitioner asserts that the Schedule C gross receipts should be reduced to reflect the following items: For 1985, a reduction of $ 21,990 to reflect alleged inventory of dental equipment and supplies on hand on December 31, 1984; and for 1986, reductions to reflect: (1) Credit card chargebacks (totaling $ 40,460) that occurred in 1987; (2) debts (totaling $ 12,300) that were discharged in bankruptcy in 1989; and (3) a 1990 judgment (in the amount of $ 104,485) entered against petitioners in an adversary proceeding in the U.S. Bankruptcy Court for the Western District of Missouri. Respondent disputes these assertions. FINDINGS OF FACT Some of *111 the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Lee's Summit, Missouri, at the time they filed their petition. During 1985, petitioner was in the dental supply business. He designed dental offices and then sold dental equipment and related supplies to the dentists. On Schedule C attached to petitioner's 1985 tax return, petitioner reported gross receipts of $ 18,780 and claimed deductions totaling $ 22,757. Because petitioner kept inadequate records, respondent reconstructed his 1985 Schedule C income. The parties agree that the following computation reflects petitioner's Schedule C gross receipts for 1985: Total bank deposits
$ 113,052 Less reductions for
nontaxable sources
(42,834)
Net taxable deposits
70,218 Less reported items
(36,744)
Adjustment
$  33,474 Petitioner's 1985 Schedule C indicates that the accounting method employed in determining profit from petitioner's business (which was described as sales) is the cash method. In the calculation of gross income, no amount is stated for cost of goods sold and/or operations. Nor *112 is any beginning or ending inventory reflected on petitioner's 1984 or 1985 Schedule C. In the notice of deficiency, respondent allowed petitioner deductions not claimed on Schedule C, including dental supplies of $ 8,917 and dental remodeling expenses of $ 4,275. Petitioner argues that his 1985 Schedule C gross income should be decreased by $ 21,990 to reflect (as cost of goods sold) an inventory of dental supplies and equipment allegedly on hand on December 31, 1984. During 1986, petitioner started American Telecommunication, an unincorporated business that provided long-distance telephone service. In December 1986, due to widespread theft of American Telecommunication's long-distance service, petitioner closed down the business. In early 1987, many of American Telecommunication's former customers who had previously paid by credit card subsequently contested these charges. Petitioner was forced to issue credit card chargebacks (debits to petitioner's bank accounts as a result of cardholder disputes and rejected sales tickets) totaling $ 40,460 during 1987. On January 9, 1989, petitioners filed a joint petition in bankruptcy under chapter 7 of the Bankruptcy Code. On June *113 14, 1989, the U.S. Bankruptcy Court for the Western District of Missouri (bankruptcy court) discharged petitioners from $ 12,300 of debt. On May 8, 1990, the bankruptcy court entered a judgment in connection with an adversary proceeding brought against petitioners for $ 104,485. On Schedule C for 1986, petitioner reported gross receipts of $ 16,460 and claimed deductions totaling $ 23,913. Because petitioner kept inadequate records, respondent reconstructed petitioner's 1986 Schedule C income. The parties agree that the following computation reflects petitioner's Schedule C gross receipts for 1986: Total bank deposits
$ 457,452 Less reductions for
nontaxable sources
(127,230)
Net taxable deposits
330,222 Less reported items
( 36,631)
Adjustment
$ 293,591 Petitioner's 1986 Schedule C does not disclose the accounting method employed to determine profit from petitioner's business. Petitioner claims that his 1986 Schedule C gross income should be decreased by: (1) $ 40,460 to reflect the credit card chargebacks in 1987; (2) $ 12,300 to reflect the 1989 discharge of debt in bankruptcy; and (3) $ 104,485 to reflect the 1990 bankruptcy court judgment. OPINION Every *114 individual liable for tax must maintain books and records sufficient to establish the amount of his or her gross income. Sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Where a taxpayer fails to maintain or produce adequate books and records, the Commissioner is authorized to compute the taxpayer's taxable income by any method that, in the Commissioner's opinion, clearly reflects income. Sec. 446; Holland v. United States, 348 U.S. 121, 130-132 (1954). In this regard, the use of the bank deposits method has long been sanctioned by the courts. DiLeo v. Commissioner, supra; Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). In the present case, petitioner failed to maintain and produce adequate books and records with respect to his business activities. Respondent therefore used the bank deposits method to reconstruct petitioner's income derived from the operation of his business activities. Bank deposits are prima *115 facie evidence of income. Boyett v. Commissioner, 204 F.2d 205, 208 (5th Cir. 1953), affg. a Memorandum Opinion of this Court dated March 14, 1951; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The bank deposits method assumes that all money deposited into a taxpayer's account during a given period constitutes taxable income. Price v. United States, 335 F.2d 671 (5th Cir. 1964); DiLeo v. Commissioner, supra.
The parties are in agreement as to the amount of petitioner's Schedule C gross receipts for 1985. Petitioner contends that he is entitled to reduce his Schedule C gross receipts by $ 21,990 for cost of goods sold. He claims he had an inventory of dental equipment and supplies on December 31, 1984, that was sold during 1985. Respondent did not allow this claimed offset on the basis that petitioner failed to substantiate the cost of any inventory of supplies and equipment on hand on December 31, 1984, in excess of the amounts allowed by respondent. In order to carry his burden of proof, petitioner must substantiate, with credible and admissible *116 evidence, the cost of the inventory of supplies and equipment allegedly on hand on December 31, 1984. At trial, petitioner submitted a summary showing the date, check number, and cost of various items, together with a duplicate invoice, dated January 16, 1985, that he prepared. Petitioner did not introduce into evidence the underlying checks and invoices for the inventory of supplies and equipment. We have considered petitioner's testimony and the materials he prepared. The record does not support allowing petitioner the reduction he seeks. Petitioner has failed to prove that he is entitled to an offset for cost of goods sold and/or operations in an amount greater than that allowed by respondent; therefore, in this regard, we sustain respondent's determination. Because petitioner possessed inadequate records, respondent also reconstructed petitioner's 1986 Schedule C income by using the bank deposits method. The amount of petitioner's 1986 Schedule C gross income is not in dispute. In essence, what petitioner claims is that his 1986 reconstructed income should be reduced to reflect items that are deductible, if at all, after 1986. This he cannot do. Expenses must be determined *117 on the same method of accounting as used in determining income. Sec. 461(a). Petitioner's 1986 Schedule C income was computed on the cash method; therefore, amounts representing allowable deductions must be computed on the cash method. Because petitioner's Schedule C deductions must be determined on the cash method of accounting, petitioner is not entitled to deductions in 1986 for expenses incurred subsequent thereto. Although petitioner's 1986 Schedule C was filed without specifying the method of accounting used, petitioner's 1985 Schedule C was filed using the cash receipts and disbursements method of accounting. The method of accounting that petitioner employed to determine his 1985 Schedule C income (or loss) is relevant because under section 446(e) petitioner is required to secure the consent of the Secretary to compute his taxable income under a method of accounting other than that previously used. Here, nothing exists in the record to indicate that petitioner either sought permission or secured the Secretary's consent for a change in his method of accounting from the cash method (used in 1985) to the accrual method (for 1986). Petitioner contends that the type of operation *118 he was involved in for 1986 was a "regulated public utility, long distance telephone exchange" and that therefore the accrual method of accounting must be used. We do not find this contention persuasive. The relevant portion of section 7701(a)(33)(D) defines a regulated public utility as a "corporation engaged in the furnishing or sale of telephone or telegraph service". Petitioner did not operate his business in corporate form; therefore, the operation involved, by statutory definition, is not a regulated public utility. Petitioner also cites section 1.446-1(d)(1), Income Tax Regs., which provides, in part: Where a taxpayer has two or more separate and distinct trades or businesses, a different method of accounting may be used for each trade or business, provided the method used for each trade or business clearly reflects the income of that particular trade or business.
However, section 1.446-1(d)(2), Income Tax Regs., adds: No trade or business will be considered separate and distinct for purposes of this paragraph unless a complete and separate set of books and records is kept for such trade or business.
Petitioner kept no separate set of books and records *119 for any of his activities; therefore, none of his activities are entitled to use a different method of accounting. [3]
Finally, petitioner argues that pursuant to the claim of right doctrine and section 1341, the reconstructed 1986 Schedule C income should be reduced to reflect the credit card chargebacks made in 1987. Respondent argues that the claim of right doctrine and section 1341 permit a deduction or credit for only the year in which the funds are repaid or the obligation discharged; i.e., 1987. We agree with respondent. Pursuant to the claim of right doctrine, income received under a claim of right constitutes taxable income in the year received even though the recipient may be under a contingent obligation to return it at a later time. Nordberg v. Commissioner, 79 T.C. 655, 664 (1982), affd. without published opinion *120 720 F.2d 658 (1st Cir. 1983). In North American Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932), considered the seminal case in this area, the Supreme Court stated: If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * * [Citations omitted.]
See also Hope v. Commissioner, 55 T.C. 1020 (1971), affd. 471 F.2d 738 (3d Cir. 1973); Woolard v. Commissioner, 47 T.C. 274 (1966); Rudzin v. Commissioner, T.C. Memo. 1995-13. In applying the claim of right doctrine, funds received by a taxpayer are considered to have been received without restriction unless "in the year of receipt a taxpayer recognizes his liability under an existing and fixed obligation to repay the amount received and makes provisions for repayment." Hope v. Commissioner, supra at 1030; *121 Nordberg v. Commissioner, supra at 665. Where a taxpayer is required to include in income amounts received under a claim of right, and in a subsequent year is required to repay a portion of the amounts, or use the amounts to discharge the obligation of the transferor of the funds, the taxpayer may then be entitled to a deduction or credit in the later year to the extent allowed by law. Sec. 1341; Krim-Ko Corp. v. Commissioner, 16 T.C. 31, 40 (1951). However, the amounts required to be included in the taxpayer's income for the year of receipt remain unaffected. Nordberg v. Commissioner, supra.
With respect to the instant case, petitioner received the long-distance telephone service proceeds without restriction in 1986. As of December 31, 1986, petitioner was under no existing and fixed liability to repay the long-distance telephone service proceeds. Further, at that time, neither the existence nor the extent of the liability could be determined. It was not until early 1987 that American Telecommunication's former customers contested the relevant charges. In addition to failing *122 to satisfy the existing and fixed obligation requirement, petitioner produced no evidence to show that he made provisions for repayment of the proceeds prior to December 31, 1986. Because petitioner has not established that the liability here in issue was existing and fixed in 1986, or that he made provisions for payment of such liability in that year, the full amount of the long-distance telephone service proceeds received in 1986 is properly includable in income for that year. Any deductions for the credit card chargebacks are not allowable for 1986. [4]
Finally, debts not discharged in bankruptcy until 1989, [5] and a bankruptcy court judgment not entered into until 1990, necessarily were not paid, nor shown to be ascertainable, in 1986, and, therefore, they are not allowable deductions in 1986. Accordingly, we sustain respondent's determination in this regard. *123 To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the deficiency.↩
1. Petitioners failed to present any evidence at trial, or argument in their posttrial briefs, regarding the applicability of the additions to tax under secs. 6653(a) and 6661(a). Therefore, we deem petitioners to have conceded these additions to tax to the extent applicable.↩
2. Karen G. Humphrey is a party to this proceeding by virtue of having filed joint returns with her husband, Lawrence G. Humphrey. Hereinafter, Lawrence G. Humphrey will be referred to as petitioner.↩
3. Even if petitioner were on the accrual method for 1986, he has not shown that any of the items in question would be accruable as a deduction for that year.↩
4. A deduction for these chargebacks was, in fact, allowed by respondent in 1987.↩
5. We fail to understand why, in any event, petitioner would be entitled to reduce his income for debts of his own discharged in bankruptcy.↩