T.C. Summary Opinion 2017-37

UNITED STATES TAX COURT

MICHAEL E. NORDLOH AND SHARON J. NORDLOH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20097-12S.                    Filed May 30, 2017.

Michael E. Nordloh and Sharon J. Nordloh, pro se.

Benjamin D. Wolarsky, for respondent.

SUMMARY OPINION

WHALEN, Judge:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.

Pursuant to section 7463(b), the decision to be entered in this case is not

reviewable by any other court, and this opinion shall not be treated as precedent

for any other case.  Hereinafter, all section references are to the Internal Revenue

Code, as amended and in effect for 2010, the taxable year in issue, unless stated otherwise, and all Rule references are to the Tax Court Rules of Practice and Procedure.

These are some of the facts in this case. In 2007 Mr. Nordloh (petitioner) and his doctors believed that he had become disabled and was unable to work because of back pain. Representatives of the Social Security Administration (SSA) disagreed and denied petitioner's application to the SSA for disability benefits (SSD benefits). Petitioner appealed the SSA's denial. In the meantime he received disability payments under an employer-provided, long-term disability policy with Metropolitan Life Insurance Co. (MetLife). Petitioners reported the disability payments received from MetLife on their Federal income tax returns, and they paid tax on them. Petitioner accepted those disability payments with the understanding that he would repay them to MetLife if his appeal of the SSA's decision were successful and he received SSD benefits.

In 2009 petitioner's application to the SSA was approved by an administrative law judge, and in 2010 he received a lump-sum payment of $87,004 from the SSA. This triggered petitioner's obligation to repay the disability payments received from MetLife. By check dated January 5, 2011, petitioner repaid $83,233 to MetLife.

There are three issues for decision: first, whether petitioners are allowed a deduction on their 2010 return for the repayment of $83,233 made during 2011 to MetLife; second, whether petitioners must include in gross income the lump-sum payment of SSD benefits totaling $87,004 received in 2010 and, if so, the amount to be included; and, third, whether petitioners are liable for an accuracy-related penalty under section 6662(a) and (b)(2) based upon an underpayment due to a substantial understatement of income tax.

## Background

### Petitioner's Disability and His Claim for Disability Benefits

Circa 2006 petitioner began experiencing back pain due to medical problems with his back, and he underwent back surgery. Petitioner's back problems left him unable to work, and after a number of months he was declared disabled by his doctors. As a result, petitioner applied to the SSA for SSD benefits. Initially his claim was denied by the SSA, and he appealed.

Petitioner began collecting disability payments in 2007 under a long-term disability policy with MetLife that had been provided by his employer. Petitioner's insurance contract with MetLife is not included in the record, but the parties agree that the contract required that: (1) petitioner apply for SSD benefits at the onset of disability, (2) the disability payments made by MetLife be offset by

any SSD benefits petitioner received, and (3) petitioner repay any overpayment of benefits to MetLife. MetLife paid disability benefits to petitioner during 2007, 2008, and 2009, and petitioners reported those benefits on their income tax returns for those years.

In August 2009 petitioner's claim for SSD benefits was finally allowed following a hearing before an administrative law judge. In a letter dated September 16, 2009, shortly after the hearing, petitioner's attorney explained that in due course petitioner would receive a "formal award notice" and a retroactive check from the SSA. The attorney warned petitioner that, under the terms of his disability insurance policy with MetLife, he might owe to MetLife some or most of the amount received from the SSA. The attorney's letter states as follows:

> It may be possible to receive your retroactive check before you receive this award notice. Either way, when you receive this check, please deposit it into your bank account. I strongly advise you not to spend any of this money (including any retroactive children's benefits). You may owe some, if not most of it, to your Long Term Disability insurer, MetLife, under the terms of your policy.

Petitioner did not receive any SSD benefits from the SSA until December 2010 when he received a lump-sum payment of $87,004. Petitioner also received an SSA-1099, Social Security Benefit Statement, which stated that the lump-sum

payment was composed of SSD benefits of $12,402 for 2007, $25,380 for 2008, $22,372 for 2009, and the balance, $26,850, for 2010.

As a consequence of receiving the lump-sum payment from the SSA, petitioner became obligated to reimburse MetLife for some or most of the disability benefits that MetLife had paid under petitioner's long-term disability policy. Initially, petitioner did not know the amount he owed to MetLife, and he had to make a number of telephone calls in order to find out.

By letter dated January 5, 2011, petitioner transmitted a check payable to MetLife for $83,232.98. That amount is composed of disability payments totaling $11,933 for 2007, $37,200 for 2008, and $34,099 for 2009. A representative of MetLife wrote to petitioner on January 12, 2011, stating that petitioner's check dated "01/05/2011" had satisfied the overpayment of disability benefits to petitioner.

Petitioners' Return for 2010

Petitioners were uncertain about how the disability payments received from the SSA and the repayment to MetLife should be treated for tax purposes. For that reason, they requested an extended filing deadline for their 2010 return, and they hired a tax professional, Victoria L. Wofford, an enrolled agent, to prepare their return.

As prepared by Ms. Wofford, petitioners' 2010 return claimed the amount repaid to MetLife in 2011, $83,233, as a deduction in computing petitioners' adjusted gross income. See generally sec. 62. The same deduction was carried over to modified adjusted gross income (MAGI), as defined by section 86(b)(2), and it was used in computing the amount of taxable SSD benefits under the formula set forth in section 86. See sec. 86(b)(1)(A)(i). Petitioners' return reported receiving total SSD benefits of $87,004, of which $19,826 was taxable. We have replicated petitioners' computation of the taxable SSD benefits, $19,826, in appendix A.

Petitioners' 2010 return discloses the fact that they claimed a deduction of $83,233, the amount repaid to MetLife, as an adjustment to gross income, in the following note attached to the return:

> Taxpayer received a lump sum payment from social security in the amount of $87,004. $26,850 was for 2010, $22,372 was for 2009, $25,380 was for 2008, and $12,402 was for 2007. However, taxpayer reported third party sick pay wages (from Metlife Agent EIN **-*******) in tax years 2007, 2008, 2009, and 2010 [sic]. Taxpayer then had to repay the third party sick pay payor, Metlife once the lump sum distribution was received from the social security administration. The repayment made to Metlife was for the amount of $83,232.98. Therefore, taxpayer is taking an adjustment to income, reported on line 36 of this tax return for the third party repayment since he has already paid income tax on those monies in previous years.

Respondent's Notice and Petitioners' Amended Return for 2010

Circa April 2012 petitioners received from respondent a Notice CP-2000 proposing changes to their 2010 return that would increase their tax by $7,822, and imposing a penalty of $1,564. This notice is not included in the record. Petitioners responded to the notice by letter dated June 29, 2012, in which they submitted Form 1040X, Amended U.S. Individual Income Tax Return, for 2010. The amended return was prepared by Thomas J. Gilday, Certified Public Accountant, a tax professional different from the one who had prepared petitioners' original return.

The explanation of changes section of the amended return states that petitioners were filing the amendment to their 2010 return for two reasons: (1) "Taxpayer [sic] reported incorrect amount of social security on original return" and (2) "Taxpayer [sic] incorrectly deducted repayment of prior year income - repayment was actually in 2011". The first correction made by the amended return was to increase the amount of taxable SSD benefits from $19,826, the amount reported on the original return, to $73,953, an increase of $54,127 in petitioners' adjusted gross income. The second correction was to increase petitioners' adjusted gross income by the amount repaid to MetLife in 2011, $83,233. These two corrections increased petitioners' taxable income by $137,360 ($54,127 +

$83,233). As a result of these changes, the amended return computed $26,919 as petitioners' corrected tax liability for taxable year 2010.

Petitioners' letter dated June 29, 2012, states that petitioners were also submitting to respondent an amended return for 2011. That amended return is not included in the record, but, according to petitioners' letter, it showed an overpayment of $21,750. Presumably, the overpayment is the result of deducting the amount repaid to MetLife, $83,233. Petitioners' letter states that they had combined the amount due for 2010, $26,919, with the overpayment for 2011, $21,750, and they were submitting a payment to respondent for the difference, $5,169, to satisfy all outstanding debts with the IRS.

Notice of Deficiency for 2010

Approximately one month later, respondent issued a notice of deficiency to petitioners determining a deficiency of $7,822 in petitioners' tax, together with an accuracy-related penalty under section 6662(a) of $1,564. This tax deficiency is identical to the additional tax computed in the Notice CP-2000, described above, that respondent sent to petitioners in April 2012. The deficiency was based upon increasing the amount of taxable SSD benefits from $19,826, the amount reported on petitioners' original return, to $73,953, and several consequent adjustments. We have replicated respondent's computation of the amount of taxable SSD

benefits, $73,953, in appendix B. The notice of deficiency did not adjust petitioners' taxable income by disallowing the deduction claimed on petitioners' original return for the amount repaid to MetLife, $83,233. As discussed above, this second adjustment was made in petitioners' amended return.

Increased Deficiency

On September 3, 2012, respondent issued a second notice to petitioners, Notice CP22A, advising them that respondent had made changes to their return for 2010 "to correct your taxable social security benefits, [and] education credit." The notice also increased the accuracy-related penalty and statutory interest. According to the notice, as a result of these changes the amount due from petitioners was $28,378.39. This amount due was based on petitioners' revised tax liability of $26,919 (increase in tax of $25,743, plus decrease in credit of $1,176), which is the same amount reported in petitioners' amended return.

Before trial respondent's attorney filed a motion for leave to file first amendment to answer in which respondent sought an increase of $19,530 in the amount of the deficiency for 2010. The motion was unopposed by petitioners and was granted by the Court. The increased deficiency sought by respondent, $19,530, plus the deficiency determined in the notice of deficiency, $7,822, total $27,352. This is $433 more than the deficiency computed in petitioners' amended

return, $26,919.  According to respondent's first amendment to answer, this increase in the amount of the deficiency was necessary to correct unspecified errors in petitioners' amended return for 2010, and in respondent's Notice CP22A.

## Discussion

We must decide whether petitioners are liable for the tax deficiency of $27,352, asserted by respondent for taxable year 2010.  We must also decide whether petitioners are liable for the accuracy-related penalty imposed by section 6662(a).

## Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous.  See Rule 142(a).  The burden of proof shifts to the Commissioner if the taxpayer produces credible evidence to support the deduction or other tax benefit at issue, as long as the taxpayer has complied with the substantiation requirements and has cooperated with the Secretary with regard to all reasonable requests for information.  Sec. 7491(a); see also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).  The Commissioner must also bear the burden of proof as to any new matter or increased deficiency sought by the

Commissioner in the answer.  E.g., Achiro v. Commissioner, 77 T.C. 881, 889-890 (1981); see Rule 142(a)(1).

There are two substantive tax issues for decision in this case.  The first is whether petitioners are allowed to deduct for taxable year 2010 the amount repaid to MetLife during 2011, $83,233.  Because we decide this issue on the preponderance of the evidence, we need not decide which party has the burden of proof.  See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008).  The second issue is whether petitioners can exclude from gross income the SSD benefits of $87,004 received during 2010.  At trial, petitioners asserted that the SSD benefits were not received under a claim of right and should be excluded from gross income.  This assertion is contradicted by petitioners' original return for 2010 and by their amended return for that year.  Both of those returns included the SSD benefits in gross income.  We find that petitioners introduced no credible evidence with respect to this issue and that section 7491(a) does not apply.  Accordingly, petitioners bear the burden of proof as to this issue.  See Rule 142(a).

With respect to a taxpayer's liability for any penalty, section 7491(c) places the burden of production on the Commissioner.  Thus, the Commissioner is required to come forward with sufficient evidence showing that it is appropriate to

impose the penalty on the taxpayer. See Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner meets this burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. See id. at 447; see also Rule 142(a).

Tax Deficiency

The asserted deficiency of $27,235 is based principally upon the disallowance of a single deduction petitioners claimed for the amount they repaid to MetLife during 2011, $83,233. On their 2010 return, petitioners claimed that amount as a deduction in computing adjusted gross income. See generally sec. 62. Petitioners omitted the deduction in their amended return, but the notice of deficiency did not reflect that change. As shown by the amended return, the effect of omitting the deduction is twofold. First, the taxable amount of SSD benefits is increased from $19,826, the amount reported on petitioners' return, to $73,953, an increase of $54,127. Compare appendix A, infra, with appendix B. Second, petitioners' adjusted gross income and taxable income are increased by the amount of the deduction, $83,233. Thus, removing the deduction for the amount repaid to MetLife in 2011 from petitioners' 2010 return caused petitioners' taxable income to increase by approximately $137,360 (i.e., $54,127 + $83,233).

Deduction of the Amount Repaid to MetLife

The first substantive tax issue is whether, in computing adjusted gross income for taxable year 2010, petitioners can properly deduct the amount that they repaid to MetLife, $83,233. Petitioners, who report income and expenses under the cash receipts and disbursements method of accounting, made that expenditure by check in 2011.

Section 461(a) provides that deductions are to be taken into account for the taxable year that is the proper taxable year under the method of accounting used in computing the taxpayer's taxable income. Under our system of annual accounting, each item of income and expense has a singular, correct treatment under a taxpayer's chosen method of accounting. See Crisp v. Commissioner, T.C. Memo. 1989-668.

Taxpayers such as petitioners who use the cash receipts and disbursements method of accounting generally are entitled to deduct an expenditure for the taxable year in which the expenditure is made. See sec. 1.446-1(c)(1)(i), Income Tax Regs. (for a taxpayer using the cash method of accounting, "[e]xpenditures are to be deducted for the taxable year in which actually made"); see also sec. 1.461-1(a)(1), Income Tax Regs. ("Under the cash receipts and disbursements

method of accounting, amounts representing allowable deductions shall, as a general rule, be taken into account for the taxable year in which paid.").

Thus, as cash method taxpayers, petitioners are entitled to deduct the amount repaid to MetLife, if at all, only for the year of repayment, 2011. See Humphrey v. Commissioner, T.C. Memo. 1995-110, 1995 WL 116268, at *3. They are not allowed to deduct that expenditure on their return for 2010. See Udeobong v. Commissioner, T.C. Memo. 2016-109.

Whether the SSD Benefits Are Includible in Gross Income

Petitioners' second argument is that the SSD benefits received in 2010 are not includible in gross income. As mentioned above, this argument is contradicted by petitioners' return for 2010 and by their amended return, both of which reported the SSD benefits in gross income. Contrary to those returns, petitioners claim that petitioner did not have control of that money because he was contractually obligated to pay it to MetLife. Petitioner stated the following at trial:

> I'm being asked to pay taxes for a second time on the social security money when I'd already paid taxes on that equivalent money once in the Met Life payments to me * * *. And there's, I guess, in the Commissioner v. Glenshaw [Glass Co., 348 U.S. 426 (1955)] case, it asks * * * what's considered as income. And it says: Income is realized whenever there are instances of undeniable * * * [accessions] to wealth; * * * over which the taxpayer has complete dominion. I

> didn't have control of that money. I mean, I was either going to get to keep the money that Met Life gave me if I wasn't disabled, [but] if I was declared disabled I had to pay it back.

In effect, petitioners argue that the SSD benefits were not received under a claim of right and are not includible in gross income because of petitioner's contractual obligation to reimburse MetLife.

It is well established that "a taxpayer need not treat as income moneys which he did not receive under a claim of right, which were not his to keep, and which he was required to transmit to someone else as a mere conduit." E.g., Diamond v. Commissioner, 56 T.C. 530, 541 (1971), aff'd, 492 F.2d 286 (7th Cir. 1974). On the other hand, it is also well established that if a taxpayer receives a payment under a claim of right and without restriction or limitation as to the disposition of the payment, then the taxpayer has received taxable income even if it still may be claimed that he is not entitled to retain the payment and even though he may be liable to restore its equivalent. See N. Am. Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932). In this case, the record does not reflect that petitioner received the SSD benefits as a mere conduit without a claim of right.

We agree with petitioners that petitioner's receipt of SSD benefits in 2010 triggered his contractual obligation to MetLife to repay the disability payments that MetLife had advanced under his long-term disability policy. We also agree

that it was financially prudent for petitioner to keep the SSD benefits intact so that he could use those funds to repay MetLife. However, there is no evidence to show that petitioner's contractual obligation to MetLife imposed a legal restriction on his use or disposition of the SSD benefits.

In fact, the letter written by petitioner's attorney on September 16, 2009, shortly after the hearing in which petitioner was found to be disabled suggests the opposite. In that letter, the attorney directed petitioner to "deposit [the check] * * * into your bank account", and he "advise[d]" petitioner "not to spend any of this money" because he might need it to repay MetLife. Thus, the attorney's letter merely advised petitioner not to spend the lump-sum payment of SSD benefits. Contrary to petitioners' argument, the letter is a recognition that there was nothing to prevent petitioner from spending the SSD benefits and that petitioner was under no legal restriction in his use or disposition of that money. Certainly, the attorney mentioned no legal restriction on petitioner's use and disposition of the funds. Furthermore, the attorney instructed petitioner to deposit the lump-sum check into his bank account and thus commingle the SSD benefits with his other funds. It is evident that petitioner followed his lawyer's advice because he issued a check to repay MetLife from his bank account several weeks later. Petitioner thus took full

control of the lump-sum payment of SSD benefits and commingled those funds with his other bank funds.

On the record in this case, we find that petitioners were under no restriction as to their use or disposition of the SSD benefits totaling $87,004 received from the SSA in 2010. We further find that petitioners received the SSD benefits in 2010 under a claim of right and those funds are includible in their gross income.

Accuracy-Related Penalty

The notice of deficiency determined that petitioners are liable for the accuracy-related penalty for an underpayment due to a substantial understatement of income tax. Section 6662(a) and (b)(2) imposes a penalty equal to 20% of the amount of any underpayment attributable to a substantial understatement of income tax. An understatement is the amount by which the correct tax exceeds the tax reported on the return. Sec. 6662(d)(2)(A). The understatement is substantial if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A)(i) and (ii).

In determining whether an understatement is substantial, the amount of the understatement is reduced by any portion attributable to an item if there is or was substantial authority for the taxpayer's treatment of the item, or if the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a

statement attached thereto and there is a reasonable basis for the tax treatment of the item by the taxpayer. Sec. 6662(d)(2)(B).

In this case, as discussed above, we find that there is an understatement in petitioners' income tax for 2010. We also find that the understatement is substantial. Thus, respondent has met his burden of production under section 7491(c) to come forward with sufficient evidence to show that it is proper to impose the penalty. See Higbee v. Commissioner, 116 T.C. at 446-447.

Petitioners contend that they are not liable for the accuracy-related penalty under section 6662(a) because there was a reasonable cause for their underpayment and they acted in good faith. Section 6664(c)(1) provides that no penalty shall be imposed with respect to any portion of an underpayment if the taxpayer demonstrates that there was reasonable cause for that portion of the underpayment and that the taxpayer acted in good faith. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Id. Reliance on the advice of a professional tax adviser constitutes reasonable cause and good faith if, taking all

circumstances into account, such reliance was reasonable and the taxpayer acted in good faith. Id. To demonstrate that the reliance was reasonable and in good faith, the taxpayer must prove by preponderance of the evidence that "(1) [t]he adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

After receiving the SSD benefits from SSA and issuing a check to MetLife, petitioners knew that they would need help filing their return for 2010. Accordingly, they requested an extended filing deadline, and they retained a tax professional from a reputable firm to prepare the return. They provided the necessary information to the adviser, and they filed the return as prepared by the adviser. Taking into account all of the circumstances, including their experience, knowledge, and education, it was reasonable for them to rely on the adviser.

After receiving a notice from the IRS raising a question about the return, petitioners retained a different tax adviser to give them further advice regarding their proper tax liability. The second adviser prepared amended returns for 2010 and 2011. Petitioners accepted the advice of the second adviser, and they filed

those amended returns. In these proceedings, respondent has accepted the amended return for 2010 as essentially correct. Taking all of the facts and circumstances into consideration, we find that petitioners acted with reasonable cause and in good faith in an effort to assess their proper tax liability, and they are not liable for an accuracy-related penalty under section 6662(a) for a substantial understatement of income tax.

To reflect the foregoing,

Decision will be entered under Rule 155.

APPENDIX A

Petitioner's computation of amount of social security benefits includible in gross income

| | | | Base amount | | | | | Adjusted base amount |
|---|---|---|---|---|---|---|---|---|
| Wages, salaries, tips, etc. | | | 93,323 | | | | | |
| Taxable interest | | | 378 | | | | | |
| Ordinary dividends | | | 5,564 | | | | | |
| Taxable refunds, credits, or offsets | | | 562 | | | | | |
| Business income or (loss) | | | 2,405 | | | | | |
| Total income | | | 102,232 | | | | | |
| Self-employment health ins. | | 2,235 | | | | | | |
| Repayment to MetLife | | 83,233 | | | | | | |
| Adjustments | | | -85,468 | | | | | |
| Sec. 86(b)(2) | MAGI | | 16,764 | MAGI | | | | 16,764 |
| Soc. Sec. benefits | | 87,004 | | | 87,004 | | 87,004 | |
| Sec. 86(a)(1)(A) | 50% Soc. Sec. benefits | | 43,502 | 50% Soc. Sec. benefits | | | | 43,502 |
| Sec. 86(b)(1)(A) | | | 60,266 | | | | | 60,266 |
| Sec. 86(c)(1)(B) | Base amount | | 32,000 | | | | | |
| | | | | Sec. 86(c)(2)(B) | Adjusted base amount | | | 44,000 |
| Excess described in sec. 86(b)(1) | | | 28,266 | | | | | |
| Sec. 86(a)(1) include the lesser of: | | | | | | | | |
| Sec. 86(a)(1)(A) | 50% Soc. Sec. benefits | | 43,502 | | | | | |
| Sec. 86(a)(1)(B) | 50% of excess | | 14,133 | | | | | |
| | | | | Excess described in sec. 86(a)(2) | | | | 16,266 |
| | | | | Sec. 86(a)(2) Additional Amount amount includible is the lesser of:: | | | | 13,826 13,826 |
| | | | | (A) the sum of: | | | | |
| | | | | (i) 85% of excess plus | | | | |
| | | | | (ii) lesser of: Amount determined under par. 1, or | | 14,133 | | |
| | | | | 50% of adjusted base less base amount or | | 6,000 | 6,000 | 6,000 |
| | | | | (B) 85% Soc. Sec. benefits | | | 73,953 | |

Amount of Soc. Sec. benefits includible in gross income:      19,826

-22-

APPENDIX B

Respondent's computation of amount of social security benefits includible in gross income

| | | | Base amount | | | | | Adjusted base amount |
|---|---|---|---|---|---|---|---|---|
| Wages, salaries, tips, etc. | | | 93,323 | | | | | |
| Taxable interest | | | 378 | | | | | |
| Ordinary dividends | | | 5,564 | | | | | |
| Taxable refunds, credits, or offsets | | | 562 | | | | | |
| Business income or (loss) | | | 2,405 | | | | | |
| Total income | | | 102,232 | | | | | |
| Self-employment health ins. | | 2,235 | | | | | | |
| Repayment to MetLife | | 0 | | | | | | |
| Adjustments | | | -2,235 | | | | | |
| Sec. 86(b)(2) | MAGI | | 99,997 | | MAGI | | | 99,997 |
| Soc. Sec. benefits | | 87,004 | | | | 87,004 | 87,004 | |
| Sec. 86(a)(1)(A) | 50% Soc. Sec. benefits | | 43,502 | | 50% Soc. Sec. benefits | | | 43,502 |
| Sec. 86(b)(1)(A) | | | 143,499 | | | | | 143,499 |
| Sec. 86(c)(1)(B) | Base amount | | 32,000 | | | | | |
| | | | | Sec. 86(c)(2)(B) | Adjusted base amount | | | 44,000 |
| Excess described in sec. 86(b)(1) | | | 111,499 | | | | | |
| Sec. 86(a)(1) include the lesser of: | | | | | | | | |
| Sec. 86(a)(1)(A) | 50% Soc. Sec. benefits | | 43,502 | | | | | |
| Sec. 86(a)(1)(B) | 50% of excess | | 55,750 | | | | | |
| | | | | Excess described in sec. 86(a)(2) | | | | 99,499 |
| | | | | Sec. 86(a)(2) Additional Amount amount includible is the lesser of: | | | | |
| | | | | (A) the sum of: | | | | |
| | | | | (i) 85% of excess plus | | 84,574 | | |
| | | | | (ii) lesser of: | | | | |
| | | | | Amount determined under par. 1, or | | 43,502 | | |
| | | | | 50% of adjusted base less base amount or | | 6,000 | 6,000 | |
| | | | | (B) 85% Soc. Sec. benefits | | | | 73,953 |
| Amount of Soc. Sec. benefits includible in gross income: | | | | | | | | 73,953 |